UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MONTANA

In re

**FRED KOHLRUSS**,

Debtor.

Case No. **08-61750-7**

## MEMORANDUM OF DECISION

At Butte in said District this 2nd day of January, 2013.

Pending in this Chapter 7 bankruptcy case is Trustee's Application for Final Compensation of Attorney Darcy M. Crum ("Crum") and Reimbursement of Expenses, filed on July 16, 2012 (Docket No. 93) which requests an award of attorney fees for Crum in the amount of $5,130.00 plus reimbursement of expenses in the amount of $81.01. An objection was filed by creditor and Debtor's former spouse Dianne Edinger ("Edinger") on the grounds Crum is requesting professional fees for travel and performing trustee tasks. A hearing on the Application was held at Missoula on November 8, 2012. Crum appeared and testified. Edinger appeared and testified, represented by attorney Daniel S. Morgan ("Morgan"). Exhibit B, which is the Decree of Dissolution of Edinger's marriage to the Debtor, was admitted into evidence. The Court took judicial notice of Edinger's Proof of Claim. At the conclusion of the parties' cases-in-chief the Court took Crum's Application under advisement. After review of the record and applicable law, this matter is ready for decision. For the reasons set forth below Edinger's objection is overruled in part and Crum's Application is approved in part.

This Court has jurisdiction of this Chapter 7 bankruptcy under 28 U.S.C. § 1334(a).

1

Crum's application for professional compensation is a core proceeding under 28 U.S.C. § 157(b)(2)(A) concerning administration of the estate. This Memorandum includes the Court's findings of fact and conclusions of law.

At the hearing Morgan clarified that Edinger does not object to any specific entries in Crum's Application, but objects more generally to the process under which Crum seeks professional fees ahead of payment to creditors. Edinger testified that her expectations in this case were different from Crum's, and that "I expected more out of the system than what I got." As Edinger put it in paragraph 5 of her objection:

> 5. In this case, unsecured creditors such as Ms. Edinger get disheartened when the case languishes for years while known assets depreciate with no effort to expeditiously liquidate or market the property. Then the unsecured class loses faith in the system when the Trustee double-dips for a commission and hourly fees for tasks which should more appropriately be compensated just once as Trustee tasks. And finally, if the estate has to pay for travel which the Trustee undertook anyway, then the Court should look with skepticism upon both this application and on the Trustee's application for regular compensation.

## FACTS & PROCEDURAL HISTORY

Edinger and Fred Kohlruss ("Kohlruss" or "Debtor") were married until their marriage was dissolved in Cause No. DR-04-118/95 in the Montana Twenty First Judicial District Court, Ravalli County. Ex. B is the "Amended Findings of Fact, Conclusions of Law, and Decree of Dissolution" ("Decree of Dissolution") entered in the marital dissolution case on October 16, 2007. Among other things, the state district court divided marital property and debts, and ordered Kohlruss to pay Edinger $7,500 in maintenance arrears, plus additional fees and costs imposed as sanctions for his failure to comply with discovery requests. Crum testified that Edinger sat on her rights and did nothing after the Decree to collect her judgment, which Crum

described as a non-dischargeable debt[1].

This case commenced on December 17, 2008, when the Debtor filed a chapter 13 petition. Before a plan was confirmed, this Court converted the case to chapter 7 by Order entered on March 26, 2009, when the Debtor failed to meet deadlines to file an amended plan, tax returns, and overdue lodging and facility tax reports.

Crum was added to the case as Trustee. She filed an application to approve employment of herself as attorney on May 12, 2009, on an hourly fee basis of $225.00 per hour plus costs. The application was approved[2] on May 12, 2009.

Crum filed an asset report. A claims bar date of July 13, 2009, was fixed. Edinger filed Proof of Claim No. 11 on June 19, 2009, asserting a secured claim in the amount of $174,000.00 based on the Decree of Dissolution. On July 24, 2010, Edinger filed Proof of Claim No. 13 amending Claim 11, and asserting an unsecured claim based on the Decree in the amount of $174,000, after foreclosure of Debtor's real estate by prior security interests.

As attorney, Crum performed legal services including opposing a creditor's motion to modify stay, which was resolved by stipulation. Crum filed a motion for turnover of property, employed auctioneers, and abandoned and liquidated property of the estate. She filed her Application for fees and costs on July 16, 2012.

Edinger filed her objection on August 1, 2012, objecting to fees for travel time and time

---

[1]There has not been an adversary proceeding commenced by the Debtor related to this case to determine whether Edinger's claim is excepted from Debtor's discharge under 11 U.S.C. §§ 523(a)(5) or (a)(15).

[2]In this district the practice by chapter 7 trustees of employing themselves as attorney for the estate is common and longstanding.

spent performing trustee duties[3]. At the hearing, however, Morgan stated that Edinger does not object to any specific item on Crum's Application, but that she objects to the process. Edinger testified that her concern is "getting along with her life," and that she "expected more out of the system than I got."

Attached to Crum's Application are billing statements showing services provided by Crum as attorney beginning May 12, 2009, through June 28, 2012. Crum seeks a total of $5,130.00 in attorney fees billed at the approved rate of $225 per hour. The tasks for which Crum seeks an award of fees include opposition to a motion to modify stay filed by Rocky Mountain Bank – Stevensville, which was eventually settled by stipulation approved by the Court[4]; employment and fee applications; turnover; abandonment; sale and tax issues. Crum requests reimbursement of expenses in the amount of $81.01 for long distance phone charges, FAX, FedEx, and postage.

The single biggest entry of fees is $1,575.00 for 7.0 hours on November 5, 2009, for travel to and from Stevensville, Montana, to "analyze claims of consignors, examine faxed documents." Crum testified that she took six (6) trips to Stevensville, but is asking for fees for only one of the trips and did not charge for the other five trips as attorney because they were made for trustee tasks. When asked why there was no fee requested for review of Debtor's Schedules, Crum answered that such a task was trustee time, not attorney time so she did not

---

[3]There is no application for compensation of Crum as trustee under the formula set forth at 11 U.S.C. § 326(a) pending at this time. Therefore, any objection Edinger may have to Crum's compensation as Trustee under § 326(a) is not ripe.

[4]In the settlement the Bank agreed to a delay of sheriff's sale and to market Debtor's motel property and residence.

include it in her Application. Edinger did not offer any evidence against any of Crum's entries for professional fees, other than stating she wants more clarification before stating that her concern is getting on with her life.

## DISCUSSION

This Court has an independent obligation to review each application to evaluate the propriety of the compensation requested. *In re Busy Beaver Bldg. Centers, Inc.*, 19 F.3d 833, 841 (3rd Cir. 1994); *In re Wildman*, 72 B.R. 700, 701 (Bankr. N.D. Ill. 1987). In *Busy Beaver*, the court explained:

> [T]he integrity of the bankruptcy system ... is at stake in the issue of a bankruptcy judge's performance of the duty to review request for fees *sua sponte*. The public expects, and has a right to expect, that an order of a court is a judge's certification that the result is proper and justified under the law.... Nothing better serves to allay [public perceptions that high professional fees unduly drive up bankruptcy costs] than the recognition that a bankruptcy judge, before a request for fees is approved, is obliged to [review it carefully] and find it personally acceptable, irrespective of the (always welcomed) observation of the [United States trustee] or other interested parties.

19 F.3d at 841 (*quoting In re Evans*, 153 B.R. 960, 968 (Bankr. E.D.Pa 1993)).

Extensive case law has developed regarding the amount and type information that applicants must include in their application. The case of *In re WRB-West Associates*, 9 Mont. B.R. 17, 18-20 (Bankr. D. Mont. 1990) summarizes thus:

> Pursuant to 11 U.S.C. §§ 327-330 and Bankruptcy Rules 2016 and 2017, this Court has an independent judicial responsibility to evaluate fees requested from the estate. *In re S.T.N. Enterprises, Inc.*, 70 B.R. 823, 831 (Bankr. Vt. 1987); *In re Seneca Oil Co.*, 65 B.R. 902 (Bankr. W.D. Okla. 1986); *In re Frontier Airlines, Inc.*, 74 B.R. 973 (Bankr. Colo. 1987). The burden of proof to show entitlement to all fees requested from the estate is on the applicant. *In re Lindberg Products, Inc.*, 50 B.R. 220, 221 (Bankr. N.D. Ill. 1985). This burden is not to be taken lightly, especially given the fact that every dollar expended on fees results in a dollar less for

> distribution to creditors of the estate. *In re Yankton College*, 101 B.R. 151, 158 (Bankr. S.D. 1989); *In re Pettibone Corp.*, 74 B.R. 293, 305 (Bankr. N.D. Ill. 1987). All expenses and fees must be shown as both actual and necessary under § [330(a)(3)] of the Code. *S.T.N.*, 70 B.R. at 834; *Yankton College*, 101 B.R. at 158; *Seneca Oil*, 65 B.R. at 912. Moreover, *In re Convent Guardian Corp.*, 103 B.R. 937, 939-940 (Bankr. N.D. Ill. 1989) holds:
>
>> Bankruptcy Rule 2016 provides that "[a]n entity seeking interim or final compensation for services, or reimbursement of necessary expenses, from the estate shall file with the court an application setting forth a detailed statement of (1) the services rendered, time expended and expenses incurred, and (2) the amounts requested." (emphasis added) The Application should contain a detailed list of expenses including the date, the type and the amount. Expenses must be actual not estimates. *In re Wildman*, 72 B.R. 700-731 (Bankr. N.D. Ill. 1987); *In re Marsh*, 14 B.R. 615, 617 (Bankr. E.D. Va. 1981). An expense is necessary if it is incurred because it was reasonably needed to accomplish the proper representation of the client. *Wildman*, 72 B.R. at 731.

The above excerpt demonstrates that this Court is obligated to review each request for fees and costs to insure that applicants provide:

1. a description of the services provided, setting forth, at a minimum, the parties involved and the nature and purpose of each task;
2. the date each service was provided;
3. the amount of time spent performing each task; and
4. the amount of fees requested for performing each task.

As explained by the Ninth Circuit: "The detailed request for fees enable the bankruptcy court to fulfill its obligation to examine carefully the requested compensation in order to ensure that the claimed expenses are justified." *In re Nucorp Energy, Inc.*, 764 F.2d 655, 658 (9th Cir. 1985).

Crum's billing statement complies with the above requirements. The Court finds that Crum has provided adequate detail to enable this Court to undertake its independent investigation. However, the Court finds that there are services provided by Crum in the

6

Application which are not compensable as attorney's fees and costs.

Other than the motion to modify stay and the instant Application, the docket shows no other contested matters in this case. Pursuant to 11 U.S.C. § 327(d), a trustee may employ him or herself as a § 327(a) professional person provided such employment is in the best interests of the estate. A trustee, authorized to serve as a professional person under § 327(d), may seek compensation above and beyond the statutory limits set forth in § 326(a), provided the trustee's request for fees meets the requirements of § 330(a) and § 328. The distinction between the trustee and trustee/attorney, and their resulting compensation, is emphasized in § 328(b), which limits the amount of compensation a trustee/attorney may receive:

> (b) If the court has authorized a trustee to serve as an attorney or accountant for the estate under section 327(d) of this title, the court may allow compensation for the trustee's services as such attorney or accountant only to the extent that the trustee performed services as attorney or accountant for the estate and not for performance of any of the trustee's duties that are generally performed by a trustee without the assistance of an attorney or accountant for the estate.

11 U.S.C. § 328(b). After recognizing the foregoing limitation on the fees that a trustee/attorney may receive as a professional person under § 330(a), this Court in *In re Perkins*, 18 Mont. B.R. 154 (Bankr. D. Mont. 2000) adopted, as an initial inquiry, the generalization posited by a Florida bankruptcy court:

> In general, professional time is limited to those tasks performed while representing the trustee in the prosecution of contested matters and adversary proceedings, attendance at court hearings in the capacity of attorney or other professional when the trustee has an interest, the preparation of professional related applications, and the performance of other specialized services that cannot be performed practically or lawfully by the trustee without engaging the services of a professional.

*Perkins*, 18 Mont. B.R. at 162-63, *quoting In re Holub*, 129 B.R. 293, 296 (Bankr. M.D.Fla.

7

1991).  In adopting such generalization, this Court also agreed that:

> [F]or the services of an attorney to be chargeable as a cost of administration, the attorney must "exercise professional legal skill and expertise beyond the ordinary knowledge and skill of the trustee", and the attorney cannot be compensated for the performance of the fiduciary duties of the trustee-client.

*Perkins*, 18 Mont. B.R. at 165, *quoting In re Crutcher Transfer Line, Inc*. 20 B.R. 705, 711 (Bankr. W.D.Ky. 1982).

Under the foregoing standards, the Court must first review the provisions of 11 U.S.C. § 704, to determine whether the activity performed by the trustee is among typical trustee duties that are covered under the compensation provisions set forth in § 326.  Upon reviewing the duties set forth in § 704 and case law, the Court finds that the services performed by Crum with respect to the sale of personal property, and abandonment of other property, are within the scope of trustee duties and did not require any legal expertise beyond the normal knowledge and skill possessed by trustees.  *See, e.g., In re Polk,* 215 B.R. 250, 254 (Bankr. M.D.Fla. 1997) ("The review of exemptions is a simple and routine trustee task, and the fact that the trustee was also acting as his own attorney does not alter the nature of that task."); *In re King*, 88 B.R. 768, 770 (Bankr. E.D.Va. 1988). "Only when unique difficulties arise may compensation be provided for services which coincide or overlap with the trustee's duties, and only to the extent of matters requiring legal expertise." *United States Trustee v. Porter, Wright, Morris & Arthur (In re J.W. Knapp Co.),* 930 F.2d 386, 388 (4th Cir. 1991); *Perkins*, 18 Mont. B.R. at 164, *quoting Knapp*.

Crum's services related to the contested motion to modify stay and settlement were outside of simple and routine trustee tasks, and the attorney fees and costs incurred by Crum were actual, reasonable and necessary for the estate at the time they were incurred.  By contrast,

the $225 fee requested by Crum for preparing a notice of abandonment of a mobile home on December 15, 2010, and the $292.50 requested for preparing exhibits and notices of sale of personal property on April 25, 2012, are tasks within the scope of the Trustee's duties. They were not contested matters and did not require any legal expertise beyond the normal knowledge and skill possessed by trustees. *Polk*, 215 B.R. at 254. The Court disallows Crum's request for attorney fees for those routine trustee tasks, which total $517.50. The Court allows the $1,575 in Crum's fees on November 5, 2009, based on her testimony that she took 6 trips and only charged for 1. The billing statement entries explain that Crum had to analyze claims of consignors and examine title documents, which the Court finds were legal services outside the scope of trustee duties and required legal expertise.

Other than the $517.50 disallowed as trustee duties, the Court finds that the professional fees and costs requested by Crum are actual, reasonable and necessary for the estate under § 330(a)(1)(A).

**IT IS ORDERED** a separate Order shall be entered approving in part and denying in part the Trustee's Application for Final Compensation of Attorney and Reimbursement of Expenses filed on July 16, 2012, and awarding Darcy M. Crum reasonable attorney fees in the amount of $4,612.50 plus reimbursement of expenses in the amount of $81.01, as an administrative expense of the estate.

BY THE COURT

*Ralph B Kirscher*
HON. RALPH B. KIRSCHER
U.S. Bankruptcy Judge
United States Bankruptcy Court
District of Montana

9